Diane Y. Byun (SBN 337155)
David C. Silver (*pro hac vice forthcoming*)
**SILVER MILLER**
5411 North University Drive – Suite 203
Coral Springs, Florida 33067
Telephone: (954) 516-6000
DByun@SilverMillerLaw.com
DSilver@SilverMillerLaw.com

*Attorneys for Plaintiff Mohan Trikha*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| MOHAN TRIKHA, an individual;<br><br>    Plaintiff,<br><br>v.<br><br>JOHN DOE, an individual;<br><br>    Defendant. | Case No. 5:26-cv-04706<br><br>[PROPOSED] ORDER GRANTING PLAINTIFF'S EMERGENCY MOTION FOR EARLY DISCOVERY, ALTERNATIVE SERVICE, AND APPLICATION FOR TEMPORARY RESTRAINING ORDER |

This matter is before the Court on Plaintiff's Motion for Early Discovery, Alternative Service, and Application for Temporary Restraining Order against Defendant JOHN DOE (the "Motion"). ECF No. 3.  Under Federal Rule of Civil Procedure 65, a Court may grant a Temporary Restraining Order *ex parte*. As required by the Rule, specific facts in the form of an affidavit or Verified Complaint must demonstrate an "immediate and irreparable injury, loss, or damage will result to movant before the adverse party can be heard in opposition," and the attorney for the movant must certify in writing any efforts made to provide notice to the adverse party. *See* Fed.R.Civ.P. 65(b)(1). Any Order issued without notice to the adverse party must state "the date and hour it was issued; describe the injury and state why it is irreparable; state why the Order was issued without notice and be promptly filed in the Clerk's Office and entered in the record. The Order expires at a time after entry -- not to exceed fourteen (14) days." *Id*. 65(b)(2).

For the reasons explained below, the Court grants Plaintiff's Motion for Early Discovery, Alternative Service, and Application for Temporary Restraining Order in its entirety:

**BACKGROUND**

In his Complaint, Plaintiff alleged the following, which he verified in an accompanying Declaration:

In or around February 2026, Plaintiff was contacted by Defendant, who falsely claimed to be affiliated with Delhi law enforcement and the Indian consulate. Declaration of Mohan Trikha at ¶ 4 ["Trikha Decl."] (citing Compl. at ¶¶ 7, 14).  Defendant informed Plaintiff that Plaintiff's financial accounts were allegedly implicated in an investigation and that immediate action was required to verify and safeguard Plaintiff's assets. *See id.* Defendant presented Plaintiff with purported official documentation containing detailed directives that, to Plaintiff, reasonably appeared authentic and that invoked the authority of various governmental, law enforcement, and regulatory agencies. *Id.* (citing Compl. at ¶ 15).

By falsely representing that Plaintiff's assets were compromised and at imminent risk of seizure or loss -- and by falsely invoking governmental authority and urgency -- Defendant frightened and pressured Plaintiff into liquidating significant assets and transferring funds through financial channels represented to be secure, legitimate, and subject to governmental oversight as part of an alleged compliance, verification, and asset-protection process. *Id.* (citing Compl. at ¶ 16).

Defendant manipulated and pressured Plaintiff into carrying out a series of significant financial transactions over a period of four weeks (March 2026 - April 2026), including the liquidation of Plaintiff's assets through brokerage platforms; transfer of funds from bank accounts by wire; conversion of such funds into cryptocurrency through recognized U.S.-based cryptocurrency exchanges; and transfer of the cryptocurrency to digital wallet addresses designated and controlled by Defendant. *Id.* (citing Compl. at ¶¶ 17-19). The foregoing enabled Defendant to steal from Plaintiff assets valued at the time at approximately Four Million Nine Hundred Ninety-Two Thousand Six Hundred Dollars ($4,992,600.00). *Id.* (citing Compl. at ¶¶ 17).

Shortly after having obtained Plaintiff's assets, communications from Defendant to Plaintiff ceased or became evasive and inconsistent; and none of Plaintiff's funds were ever returned to Plaintiff. *Id.* (citing Compl. at ¶ 24). Plaintiff later learned that Defendant was not affiliated with any legitimate governmental or regulatory authority and that the supposed "asset protection" process was in fact a coordinated fraud scheme. *Id.* (citing Compl. at ¶ 25).

Through blockchain analytics tracing the path of Plaintiff's cryptocurrency assets through the scheme coordinated by Defendant, it has become apparent that Defendant has stolen all of Plaintiff's assets; and those assets have been transferred to non-custodial private digital wallets under Defendant's sole control or have been liquidated into fiat currency and dissipated by Defendant. *Id*. (citing Compl. at ¶ 26). *See also* Declaration of David C. Silver ("Silver Decl.") at ¶¶ 10-15. For example, as of 6:00 a.m. PT on the date of this filing (May 18, 2026), Plaintiff's stolen assets have been traced to, *inter alia*, the following cryptocurrency wallet addresses in non-custodial private wallets, which are believed to be owned or controlled by Defendant or an unknown third-party to whom Defendant has transferred those stolen assets and which have been used to launder the assets stolen from Plaintiff (the "Four Intermediate Destination Addresses") [Trikha Decl. (citing Compl. at ¶ 27); Silver Decl. at ¶¶ 13-14]:

| Four Intermediate Destination Addresses | Asset Type | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|
| 1APgytVDAsXEK86LSP4G9F6onhCyEAPRF2 | BTC | 25.277448 |
| Bc1q6f8cyjnldjf8acqd2fxmr9qsee86jaxpzf7jp4 | BTC | 17.0 |
| bc1qpyxmkzuc3lzc67g7tuq0jgq6tfsgvhudlzen8n | BTC | 4.0 |
| bc1qwvg5p5qfy2glvrxy7d77vplph4k58ll09yj7pd | BTC | 25.5 |
| | TOTAL | 71.777448 BTC |

Shortly after 6:00 a.m. PT on May 18, 2026, the stolen assets held in the Four Intermediate Destination Addresses were further consolidated into just two separate private digital wallet addresses (the "Two Consolidated Destination Addresses"):

| Two Consolidated Destination Addresses | Asset Type | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|
| Bc1qux2x93td0ljuv3zmx6guhz0lx67smru832pp93 | BTC | 32.7359584 BTC |
| Bc1qa7u3d4505e8at2a2t6g6wvvsfr3mfs39p5cne6 | BTC | 39.0414896 BTC |
| | TOTAL | 71.777448 BTC |

FLOW OF STOLEN BTC
[ALL 71,777448 BTC MOVED 5/18/2026]

[Trikha Decl. (citing Compl. at ¶ 28); Silver Decl. at ¶ 15]

Plaintiff does not own or manage, and cannot himself access, any of the above-listed Four Intermediate Destination Addresses and the Two Consolidated Destination Addresses; although those Four Intermediate Destination Addresses and the Two Consolidated Destination Addresses appear to be holding, or held, Plaintiff's stolen assets. [Trikha Decl. (citing Compl. at ¶ 29)]

As a result of the foregoing scheme, Plaintiff has lost approximately Four Million Nine Hundred Ninety-Two Thousand Six Hundred Dollars ($4,992,600.00) worth of cryptocurrency and is left trying to get answers to help him uncover where his funds are or where they went after they were stolen by JOHN DOE. Given these facts, Plaintiff commenced this action and is entitled to a Temporary Restraining Order freezing Defendant JOHN DOE's assets -- including the Two Consolidated Destination Addresses maintained by Defendant JOHN DOE, for him, or by any entity under his control and any subsequent digital wallet address to which the assets stolen from Plaintiff have been or are in the future transferred -- to preserve the *status quo ante* pending the outcome of this litigation.

## LEGAL STANDARD

The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *See Stuhlbarg Intern. Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001). "The proper legal standard for preliminary injunctive

- 4 -

relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also*, *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction."); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

The Ninth Circuit has also held that an "injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (quoting *Lands Council v. McNair*, 537 F.3d 981, 97 (9th Cir. 2008) (*en banc*)).[1] The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also*, *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief."). Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

## ANALYSIS

Under the general rule, federal courts lack the authority to freeze assets of a defendant before the claims have been brought to judgment. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322 (1999). "However, when the plaintiff is seeking equitable relief, as opposed to merely legal damages, the federal courts have the authority to issue a preliminary injunction in order to freeze the assets of a defendant if the requirements for a preliminary injunction are otherwise satisfied." *Clayton v. Heartland Resources, Inc.*, 2008 WL 5046806, at *4 (W.D. Ky. Nov. 21, 2008) (citing *Grupo*, 527 U.S. at 324-325); *see also*, *In re Focus Media, Inc.*, 387 F.3d 1077, 1084 (9th Cir.

---

[1] The Ninth Circuit has found that this "serious question" version of the circuit's sliding scale approach survives "when applied as part of the four-element *Winter* test." *All. for the Wild Rockies*, 632 F.3d at 1134. "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id*. at 1135.

2004) (citations omitted). In *Focus Media*, the Ninth Circuit specifically noted that the rule against injunctive relief as articulated in *Grupo Mexicano* did not apply to the underlying claims for fraudulent conveyance and constructive trust, ultimately concluding that the trial court's entry of a preliminary injunction had been proper. *Id*. at 1085.

Moreover, Rule 64 of the Federal Rules of Civil Procedure provides that when state law authorizes a prejudgment remedy to secure assets subject to a plaintiff's state law claims, state law governs such relief. Rule 64, Fed.R.Civ.P.; *Granny Goose Foods, Inc. v. Bhd. of Teamsters Local 70*, 415 U.S. 423, 436 n. 10 (1974).

Here, Plaintiff seeks equitable relief in addition to his legal remedies and is entitled to an injunction to maintain the status quo until the claims in the Complaint can be resolved. Amongst other claims and remedies sought, Plaintiff alleges violations of numerous common law torts (conversion, replevin, unjust enrichment) and requests relief in the following form of equity:

- A judgment awarding Plaintiff equitable restitution, including, without limitation, restoration of the status quo ante, and return to Plaintiff all cryptocurrency or fiat currency taken from him in connection with the government impersonation scam perpetrated upon Plaintiff by Defendant.

- the equitable imposition of a constructive trust over the property taken from Plaintiff that is currently held by Defendant, an individual, in the Two Consolidated Destination Addresses and any subsequent digital wallet address to which the assets stolen from Plaintiff have been or are in the future transferred; and [entry of an Order] that the wrongfully obtained property be restored to Plaintiff.

Additionally, with regard to the claim for imposition of a constructive trust, this Court has authorized equitable injunctive relief to secure the assets subject to the claim. *See*, *e.g.*, *Rumbaugh v. Harley*, No. 2:18-cv-01970-KJM-AC, 2018 WL 4002854, at *9 (E.D. Cal Aug 22, 2018).

Thus, the Court will begin its analysis by considering the likelihood that Plaintiff will prevail on the merits.

## I.    **Plaintiff Has a Substantial Likelihood of Success on the Merits of His Claims**

The harms alleged in the Complaint, as well as the facts set forth in Plaintiff's declaration, make clear that Plaintiff was victimized by JOHN DOE who -- through actual fraud, misappropriation, conversion, theft, or other questionable means -- obtained Plaintiff's cryptocurrency, which in equity and good conscience JOHN DOE should not be permitted to hold.

Based on that fraudulent behavior, Plaintiff has asserted claims for: (1) replevin, (2) conversion, (3) unjust enrichment, and (4) violation of California Penal Code § 496.

Moreover, any and all cryptocurrency assets held in the Two Consolidated Destination Addresses to which JOHN DOE transferred any portion of the funds stolen from Plaintiff -- and any subsequent digital wallet address to which the assets stolen from Plaintiff have been or are in the future transferred -- must be held in a constructive trust for Plaintiff's benefit, as JOHN DOE is not entitled to the benefit of wrongfully misappropriated, converted, and stolen funds and cryptocurrency assets that were taken from Plaintiff.

In light of the foregoing, there is a high likelihood that Plaintiff will succeed on his claims.

As for Plaintiff's request that a constructive trust be applied, California law provides that a constructive trust is appropriately imposed as follows:

> "A plaintiff seeking imposition of a constructive trust must show: (1) the existence of a res, meaning property or some interest in property; (2) the right to that res; and (3) the wrongful acquisition or detention of the res by another party who is not entitled to it."

*Rumbaugh*, 2018 WL 4002854, at *9, citing *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 909 (9th Cir. 2010). A constructive trust is therefore appropriately established "to right a wrong committed and to prevent unjust enrichment of one person at the expense of another either as a result of fraud, undue influence, abuse of confidence or mistake in the transaction." *In re Fin. Federated Title and Trust, Inc.*, 347 F.3d 880, 891 (11th Cir. 2003).

Therefore, Plaintiff has shown a likelihood of success on the merits of his claims.

## II.    Plaintiff Will Suffer Irreparable Harm if Defendant John Doe Is Not Enjoined

There is a significant risk that JOHN DOE may dissipate the money stolen from Plaintiff or simply transfer those funds into untraceable cryptocurrency accounts or to offshore entities organized in unknown locations. Without entry of the Temporary Restraining Order, Plaintiff may be unable to recover for his equitable claims. *See Goldwater Bank, N.A. v. Elizarov*, No. 22-55404, 2023 WL 387037, at *2 (9th Cir. Jan. 25, 2023) (affirming the district court's grant of preliminary injunction where the record indicated defendant likely intended to transfer or alienate plaintiffs' assets).

Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze JOHN DOE's assets, including those in the Two Consolidated Destination Addresses -- and any subsequent digital wallet address to which

the assets stolen from Plaintiff have been or are in the future transferred -- to maintain the *status quo* to avoid dissipation of the assets illegally taken from Plaintiff. These risks justify entering a temporary restraining order.  *See Jacobo v. Doe*, No. 22-cv-00672, 2022 WL 2052637, at *5 (E.D. Cal. June 7, 2022) ("*Jacobo I*") (collecting cases finding that "the risk of irreparable harm [was] likely in matters concerning fraudulent transfers of cryptocurrency due to the risk of anonymous and speedy asset dissipation").  The fact that the stolen assets have been transferred by, or on behalf of, Defendant JOHN DOE as recently as the morning of Plaintiff's filing further heightens the urgency of entering a Temporary Restraining Order.

In light of the foregoing, Plaintiff has established in his Motion and the Declarations in support thereof that Plaintiff's rights will be immediately and irreparably harmed absent a Temporary Restraining Order from this Court.

### III.    There Is Little Prejudice to Defendant Doe If the Temporary Restraining Order Is Entered

While Plaintiff would be severely prejudiced if JOHN DOE dissipates the funds wrongfully taken from Plaintiff, JOHN DOE faces no such prejudice. An order forbidding JOHN DOE from moving his assets will, at worst, delay JOHN DOE from shifting his purloined funds to an untraceable cryptocurrency accounts; and at best, will help maintain the *status quo* for Plaintiff to recover the valuable assets illegally obtained from Plaintiff's cryptocurrency account.

### IV.    Plaintiff Has No Adequate Remedy at Law

Plaintiff's only remedy to recover the funds fraudulently taken from him is through his right to equitable relief in the form of enjoining asset dissipation by JOHN DOE, beginning with imposition of a constructive trust to prevent the further dissipation of Plaintiff's assets.  A legal remedy for monetary relief alone will not adequately protect Plaintiff's equitable ownership interest in those funds and assets that can disappear with the click of a computer mouse.

### V.    Entering a Temporary Restraining Order Is In the Public Interest

As it pertains to the balance of the equities, the Ninth Circuit has "held that when a district court balances the hardships of the public interest against a private interest, the public interest should receive greater weight." *World Wide Factors*, 882 F.2d 344, 347 (9th Cir. 1989) (*citing Federal Trade Comm'n v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1165 (9th Cir. 1984)). "Public equities include, but are not limited to, economic effects and pro-competitive advantages for consumers . . . ." *Id.*

The public interest strongly supports entry of a Temporary Restraining Order here.

Moreover, entering a Temporary Restraining Order would actually serve the public interest by promoting the objectives of the Financial Crimes Enforcement Network [FinCEN] (a division of the U.S. Department of the Treasury) by providing assurance that courts will protect elderly consumer's assets from theft and will aid elders in their recovery of stolen assets when they can be readily located and traced to specific locations, like the purloined assets in this action.  According to FBI statistics, more than 145,000 senior citizens over the age of 60 fell victim to elder fraud in 2024 alone, with their losses exceeding $4.8 billion -- a 43% increase from the prior year.[2] These numbers increased significantly in 2025, with more than 200,000 individuals over the age of 60 affected by elder fraud -- a nearly 40% increase from 2024 -- and total losses exceeding $7.7 billion -- about a 60% increase from 2024.[3] Of the $7.7 billion, over $4.3 billion was attributable to cryptocurrency-related transactions.[4]  The magnitude of this problem has led experts to call elder financial exploitation "a burgeoning public health crisis" and a "virtual epidemic."[5]  Entry of a Temporary Restraining Order would serve the public interest of addressing and treating that "virtual epidemic."

As set forth herein, Plaintiff is entitled to a Temporary Restraining Order freezing Defendant JOHN DOE's assets -- including the Two Consolidated Destination Addresses maintained by Defendant JOHN DOE, for him, or by any entity under his control and any subsequent digital wallet address to which the assets stolen from Plaintiff have been or are in the future transferred -- to preserve the *status quo ante* pending the outcome of this litigation. Moreover, because of the apparent strength of Plaintiff's case, the Court concludes that Plaintiff need not provide any financial security in the form of a bond pursuant to Fed.R.Civ.P. 65(c) at this time. *See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) ("The district court is afforded wide discretion in setting the amount of the bond, and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction." (quotation omitted)).

---

[2] *See* Federal Bureau of Investigations' *2024 Elder Fraud Report,* at 27.

[3] *See* Federal Bureau of Investigations' *2025 Internet Crime Report,* at 44. *See also id.* at 52 (general crypto losses across age groups increased by 22% from 2024, showing losses over $11.3 billion).

[4] *See id.* at 46 (2025 FBI IC3 Report).

[5] *See* Securities Exchange Commission's report on *Elder Financial Exploitation* (June 2018) at page i.

## VI.     A Limited Scope Asset Freeze Without Prior Notice is Appropriate

Where a plaintiff makes an *ex parte* request to freeze assets, the Court must ensure it has such authority. "Typically, a court may issue an order to freeze the assets of a defendant only after the claims have been brought to judgment." *Jacobo I*, 2022 WL 2052637, at \*3 (citing *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322 (1999)). A court may freeze assets earlier in the case when a plaintiff seeks equitable relief and a temporary restraining order is appropriate. *See In re Focus Media Inc.*, 387 F.3d 1077, 1085 (9th Cir. 2004) ("Grupo Mexicano [] exempts from its proscription against preliminary injunctions freezing assets cases involving bankruptcy and fraudulent conveyances, and cases in which equitable relief is sought.").

Because Plaintiff seeks equitable relief, including by constructive trust, this Court may issue a temporary restraining order freezing the assets at issue. *See* Compl. at "Prayer for Relief"; *Jacobo I*, 2022 WL 2052637, at \*3. "A plaintiff seeking imposition of a constructive trust must show: (1) the existence of a res (property or some interest in property); (2) the right to that res; and (3) the wrongful acquisition or detention of the res by another party who is not entitled to it." *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 908–09 (9th Cir. 2010) (applying California law). At this early stage, the record indicates Plaintiff is likely to be able to support his request for a constructive trust, for the same reasons that he is likely to succeed on the merits of his claims. Therefore, there is authority to order a temporary asset freeze.

Furthermore, it is appropriate for the order to issue without notice to Defendant. *See* Fed. R. Civ. P. 65(b)(1). The record contains specific facts showing that immediate dissipation of assets is likely if Defendant were to receive advance notice, and Plaintiff's counsel has certified in writing the reasons why notice should not be required. *See* Declaration of David C. Silver at ¶¶ 6-9.

## VII.     Limited Early Discovery Is Appropriate

Generally, Federal Rule of Civil Procedure 26 does not permit discovery "from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d)(1). Pre-conference, courts normally require the party requesting early discovery to show "good cause." *See, e.g., Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). Courts routinely permit expedited discovery where necessary to "ascertain the identity of a [d]oe defendant." *Jacobo v. Doe*,

No. 22-cv-00672, 2022 WL 2079766, at *2 (E.D. Cal. June 9, 2022) ("*Jacobo II*") (collecting authority).

Here, good cause exists to authorize limited third-party discovery to uncover the identity of Defendant JOHN DOE and obtain information necessary to determine how the attack occurred. The requested discovery will enable Plaintiff to mitigate ongoing harm and protect himself from further victimization before the Rule 26(f) conference. Courts routinely permit expedited discovery "in the interests of justice" where, as here, such discovery is necessary to identify unknown Doe defendants and prevent continuing harm. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) ("[T]he district court erred in dismissing [plaintiff's] complaint against Doe simply because [plaintiff] was not aware of Doe's identity at the time he filed his complaint.").

## VII.    Alternative Service of Process Is Proper

"[T]he method of service crafted by the district court must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1016 (9th Cir. 2002) (quoting *Mullane v. Centr. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)). Plaintiff seeks to serve via NFT because he does not know the name identity, or address of Defendant JOHN DOE but does know the addresses of his digital wallets, which can receive NFTs.

Because Defendant is located outside of the United States [*see* Compl. at ¶ 7], Federal Rule of Civil Procedure 4(f)(3) permits service by "means not prohibited by international agreement" and consistent with Constitutional due process, which requires service to be "reasonably calculated" to provide notice. *Rio Props., Inc.* 284 F.3d at 1015-16. Although the Hague Service Convention impose certain restrictions on forms of service of documents abroad, such restrictions do not apply where the identity and address of the person to be served is unknown. *See Amazon.com Inc. v. Ananchenko,* No. 23-cv-1703, 2024 WL 492283, at *2-4 (W.D. Wash. Feb. 7, 2024) ("The Hague Convention expressly 'shall not apply where the address of the person to be served with the document is not known.'") (quoting Hague Convention, art. 1.). As such, the proper test is whether the proposed method is reasonably calculated to provide notice. Plaintiff's proposal fulfills that requirement. Mr. Silver has testified that the wallets upon which service is proposed to be made shows activity that is traceable to Defendant JOHN DOE. Furthermore, many courts have held that the proposed NFT service provides

adequate service in similar situations. *See, e.g., Nibi, Inc. v. John Doe*, 24-cv-6184-EKL, Dkt. No. 22 at 4 (N.D. Cal. Jan. 2, 2025).

**Accordingly, IT IS HEREBY ORDERED AND ADJUDGED that:**

<u>**TEMPORARY RESTRAINING ORDER**</u>

1.    Plaintiff's Motion for Early Discovery, Alternative Service, and Application for Temporary Restraining Order against Defendant JOHN DOE is **GRANTED**.

2.    A separate Temporary Restraining Order will issue.

<u>**NOTICE NOT PROVIDED TO PRESENTLY-UNIDENTIFIED DEFENDANT**</u>

3.    Notice to Defendant is not required prior to issuance of this Temporary Restraining Order. Defendant is an anonymous actor who has actively concealed his identity and is engaged in ongoing efforts to move and launder stolen digital assets. Plaintiff has demonstrated that he is unable to identify or locate Defendant for the purpose of providing notice. Further, providing notice may cause Defendant to dissipate assets, causing irreparable harm to Plaintiff.  Under Federal Rule of Civil Procedure 65(b)(1), the Court concludes immediate and irreparable injury will result before Defendant can be heard in opposition, and that the circumstances justify issuance of this Order without notice.

4.    The cryptocurrency at issue here "poses a heightened risk of asset dissipation." *Fed. Trade Comm'n v. Dluca*, No. 0:18-cv-60379-RKA, 2018 WL 1830800, at \*2–3 (S.D. Fla. Feb. 28, 2018), *report and recommendation adopted*, No. 0:18-cv-60379-KMM, 2018 WL 1811904 (S.D. Fla. Mar. 12, 2018).  As one district court has explained, "cryptocurrencies are circulated through a decentralized computer network, without relying on traditional banking institutions or other clearinghouses. This independence from traditional custodians makes it difficult for law enforcement to trace or freeze cryptocurrencies in the event of fraud or theft[.]" *Id*. If defendant were provided notice of this action, "it would be a simple matter for [him] to transfer [the Tether] to unidentified recipients outside the traditional banking system, including contacts in foreign countries, and effectively put it beyond the reach of this [c]ourt." *Id*.

5.    In light of the foregoing, issuance of relief on an *ex parte* basis is justified.

<u>**BOND TO BE POSTED**</u>

6.    Federal Rule of Civil Procedure 65(c) requires the party moving for a temporary restraining order to "give[] security in an amount that the court considers proper to pay the costs and

damages sustained by any party found to have been wrongfully enjoined or restrained." Because Defendant's identity is unknown at this time, there is no evidence before the court demonstrating that defendant will suffer any damages as a result of the requested temporary restraining order. Therefore, the court will not require Plaintiff to post a bond at this time. *See*, *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) ("The district court is afforded wide discretion in setting the amount of the bond, and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction.") (internal citation omitted).

### ALTERNATIVE SERVICE VIA NFT

7. Plaintiff has demonstrated that traditional service is impracticable due to Defendant's anonymity and use of blockchain-based infrastructure to perpetrate the alleged fraud.

8. Plaintiff has identified digital wallet addresses used by Defendant in connection with the alleged misconduct.

9. Service via non-fungible token (NFT) to those wallet addresses is reasonably calculated to provide actual notice to Defendant and comports with constitutional due process requirements under Federal Rule of Civil Procedure 4(f)(3).

10. Plaintiff is granted leave to serve Defendant via NFT to the Four Intermediate Destination Addresses and the Two Consolidated Destination Addresses:

- bc1qpyxmkzuc3lzc67g7tuq0jgq6tfsgvhudlzen8n
- Bc1q6f8cyjnldjf8acqd2fxmr9qsee86jaxpzf7jp4
- bc1qwvg5p5qfy2glvrxy7d77vplph4k58ll09yj7pd
- 1APgytVDAsXEK86LSP4G9F6onhCyEAPRF2
- Bc1qux2x93td0ljuv3zmx6guhz0lx67smru832pp93
- Bc1qa7u3d4505e8at2a2t6g6wvvsfr3mfs39p5cne6

11. Plaintiff shall serve on these addresses an NFT which contains a notice of this action with summons language and a hyperlink specially created website that includes: (a) a notice of this action; (b) a hyperlink to the summons and Complaint; and (c) all filings and orders in this action.

12. The NFT shall display on its face an image that includes the summons in this action when delivered to the addresses identified above.

13.    Plaintiff shall include messaging with the NFT indicating that he is effectuating service of official court documents, in order to mitigate the risk that Defendant perceives the NFT as a scam or malicious code.

14.    Service via NFT shall be deemed effective upon successful transfer of the NFT to the identified wallet addresses.

### EXPEDITED DISCOVERY

15.    Plaintiff has demonstrated that expedited discovery is necessary to identify the unknown Defendant responsible for the alleged theft of digital assets.

16.    Plaintiff has shown that seeking information from cryptocurrency exchanges and service providers that may possess identifying information about Defendant and the methods used, is narrowly tailored, relevant to Plaintiff's claims, and essential to advancing the case.

17.    The balance of equities favors granting limited early discovery, and the request is not unduly prejudicial to any party.

18.    The discovery sought is consistent with Rule 45 and Rule 26(d) of the Federal Rules of Civil Procedure and is supported by precedent permitting early discovery to identify anonymous defendants. *See, e.g., UMG Recordings, Inc. v. Does 1–4*, 2006 WL 1343597 (N.D. Cal. Mar. 6, 2006).

19.    Plaintiff is granted leave to serve expedited discovery on third-party entities identified in his motion, including cryptocurrency exchanges and blockchain service providers, for the purpose of: (a) identifying the individual responsible for the alleged government impersonation attack and theft of digital assets; (b) obtaining information relevant to the location, movement, and current status of the stolen assets;  and (c) determining the methods used by Defendant to execute and conceal the attack.

20.    Each subpoena recipient shall have fourteen (14) days from the date of service to object to or move to quash the subpoena.

21.    Plaintiff may use any information obtained through this expedited discovery for the purpose of identifying and prosecuting his claims against the JOHN DOE Defendant in this action.

22.    The above dates may be revised upon stipulation by all parties and approval of this Court.

**DONE** and **ORDERED** in Chambers in San Jose, California, this 18th day of May 2026 at 6:15 p.m. Pacific Time.

_____
UNITED STATES DISTRICT JUDGE